**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES E. BARANOWSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1379** |
| | ) | |
| **CAPTAIN ROGER N. WATERS and** | ) | **Judge Nora Barry Fischer** |
| **LIEUTENANT CHARLES L. DEPP,** | ) | **U.S. District Judge** |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION**</u>

**I. INTRODUCTION**

Pending before the Court is a Motion for Reconsideration filed by Plaintiff James E. Baranowski ("Baranowski") pursuant to Federal Rule of Civil Procedure 59(e). Doc. No. 63. Baranowski asks the Court to reconsider its decision of March 18, 2008, granting summary judgment in favor of the Defendants, Captain Roger N. Waters ("Waters") and Lieutenant Charles L. Depp ("Depp"). *Baranowski v. Waters*, 2008 WL 728366, 2008 U.S. Dist. LEXIS 21301 (W.D.Pa. March 18, 2008). For the reasons that follow, Baranowski's Motion for Reconsideration will be GRANTED IN PART and DENIED IN PART. The Court remains convinced that Waters and Depp are entitled to summary judgment, but only on the basis of one of the two alternative grounds relied upon by the Court in the memorandum opinion of March 18, 2008.

**II. FACTUAL BACKGROUND**

On August 11, 1986, Baranowski commenced his employment with the Pennsylvania State Police ("PSP"). Doc. Nos. 45, ¶ 2, 49, ¶ 2. Between that time and February 2003, he had

1

never been subject to discipline for serious misconduct related to his employment as a police officer. *Id.*, ¶ 4. He had a "satisfactory" job performance rating in 2002. *Id.*, ¶ 6.

On December 24, 2002, Michael Ellerbe ("Ellerbe"), a 12-year old black male, was shot in the back by a member of the PSP. *Id.*, ¶ 11. According to police officers Samuel Nassan ("Nassan") and Juan Curry ("Curry"), Ellerbe was believed to have stolen a vehicle. *Id.*, ¶ 12. The shooting allegedly occurred while Ellerbe was fleeing from Nassan and Curry. *Id.*, ¶ 13. Ellerbe died as a result of his injuries.

At the time of the shooting, Baranowski was at the Uniontown State Police Barracks ("Uniontown Barracks"). *Id.*, ¶ 14. After learning of the incident, he arrived at the scene. *Id.*, ¶ 15. As the highest ranking officer present in the aftermath of the shooting, Baranowski was considered to be the "incident commander." *Id.*, ¶ 14. He obtained knowledge about the shooting through both his observations at the scene and his discussions with Nassan and Curry. *Id.*, ¶ 16.

Baranowski completed a Homicide Investigation Action Report on December 27, 2002. Doc. No. 26-10, pp. 12-17. In the report, he described his arrival at the scene and attributed the following statements to Nassan:

> I shot him, he['s] just a kid. I thought he had shot Curry and I ordered him to stop and take his hands out of his pocket. He refused and I shot him once.

_____

*Id.*, p. 12. Curry told Baranowski that his weapon had also discharged. According to the Report, Curry stated:

> I slipped on the fence and my weapon went off. I fell to the ground and when I heard a second shot, I jumped up and saw the actor was down. When I jumped up, Nassan asked me if I had been shot and I stated ['No']."

_Id._  Baranowski recorded his recollection of a black juvenile male lying "face up on the sidewalk" who had "a large gaping exit wound located in the center front of the chest and a small entry wound in the center back of the chest."  _Id._, p. 13.  The individual had been lying in a "pool of blood" with no vital signs.  _Id._  Two bullet casings were recovered from the scene.  _Id._, p. 16. One such casing was found on each side of the fence referenced in Curry's statement.  _Id._

Baranowski later began to suspect that the shooting had not occurred in the manner described by Nassan and Curry.  Doc. No. 45, ¶ 18.  On February 12, 2003, he was questioned about the incident by a Federal Bureau of Investigation ("FBI") agent at the Uniontown Barracks. _Id._, ¶ 20.  At that time, Depp was the "Troop B" Uniontown Barracks Station Commander.  Doc. Nos. 45, ¶ 21, 49, ¶ 21.  Baranowski contends that he was summoned to Depp's office after being questioned by the FBI agent.  Doc. No. 45, ¶ 20.  According to Baranowski, Depp starting talking to him about the Ellerbe shooting, at which point he informed Depp of his view that the shooting had not occurred in the manner described by Nassan and Curry.  _Id._, ¶ 28.  As the conversation continued, Baranowski allegedly insinuated that a "cover up" was occurring.  _Id._, ¶ 29. Baranowski further contends that Depp abruptly told him to "mind [his] own business," and that he was not a part of the investigation into the Ellerbe shooting.  Doc. No. 26-9, p. 21.  In a deposition, Depp testified that he had not spoken with Baranowski about the matter.  Doc. No. 35-4, pp. 11-12.

Waters was the Commander of "Troop B," which maintained its headquarters in Washington, Pennsylvania.  Doc. Nos. 45, ¶ 32, 49, ¶ 32.  One week after his alleged conversation with Depp, Baranowski relayed his reservations about the investigation into the

Ellerbe shooting to Waters. *Id.*, ¶ 38. According to Baranowski, Waters showed no reaction to his concerns. Doc. No. 45, ¶ 38.

Baranowski asserts that he was later summoned back to Depp's office, where Depp warned him not to perform private investigative work on behalf of Ellerbe's family. *Id.*, ¶ 39. Depp allegedly told Baranowski that he would face serious consequences if he were found to be assisting Ellerbe's family in such a way. *Id.*

Depp initiated six separate "Use of Force or Complaint Reception and Processing Worksheets" against Baranowski between March 3, 2003, and March 11, 2003. Doc. Nos. 45, ¶ 40, 49, ¶ 40. None of these complaints was based on the investigation into the Ellerbe shooting. *Id.* Waters ultimately sustained all of the complaints against Baranowski between June 2003 and October 2003. *Id.*, ¶ 42.

A "Pre-Disciplinary Conference" was conducted on June 30, 2003. Doc. No. 45, ¶ 47. On that day, Waters sustained four of the complaints which had been lodged against Baranowski. Doc. No. 26-10, pp. 122-125. According to Baranowski, Waters informed him that his job was in jeopardy. Doc. No. 45, ¶ 47. As a member of the PSP, Baranowski was entitled to retirement and medical benefits. Doc. Nos. 45, ¶ 49, 49, ¶ 49. Nevertheless, he would have lost such benefits had he been terminated by the PSP for disciplinary reasons. *Id.* Allegedly fearing termination, Baranowski gave the PSP his "notice of retirement" on July 7, 2003. *Id.*, ¶ 50. He was subsequently relieved of his duties as a sergeant and placed on desk duty. *Id.*, ¶ 51. His weapon was confiscated. *Id.* Upon his departure, Baranowski was unable to obtain an Honorable Discharge Certificate. Doc. No. 38-7, p. 2.

On May 23, 2005, Baranowski filed a praecipe for a writ of summons against Waters and

Depp in the Court of Common Pleas of Fayette County, Pennsylvania. Doc. No. 38-9, pp. 2-3.

He filed a complaint against Waters and Depp in this Court on September 30, 2005, alleging that

they had constructively discharged him in retaliation for his comments about the investigation

into the Ellerbe shooting. Doc. No. 1, ¶¶ 10-12. His claims, which were based on the First and

Fourteenth Amendments to the United States Constitution, were brought pursuant to 42 U.S.C. §

1983. *Id.*, ¶ 14. Waters and Depp filed a Motion for Summary Judgment on August 23, 2007.

Doc. No. 23. In a memorandum opinion dated March 18, 2008, the Court granted summary

judgment in favor of Waters and Depp. *Baranowski v. Waters*, 2008 WL 728366, 2008 U.S.

Dist. LEXIS 21301 (W.D.Pa. March 18, 2008). Baranowski filed a Motion for Reconsideration

on March 27, 2008. Doc. No. 63. An oral argument was conducted before the Court on April

17, 2008. The parties later filed supplemental briefs concerning Baranowski's Motion for

Reconsideration. Doc. Nos. 64, 67-68, 70. This motion is currently pending before the Court

and, hence, is the subject of this memorandum opinion.

It is worth noting that Michael Hickenbottom ("Hickenbottom"), the father of Ellerbe and

the personal representative of his estate, successfully sued Nassan and Curry for shooting and

killing Ellerbe in *Hickenbottom v. Nassan*, CV-03-223. On March 11, 2008, just one week

before this Court granted the Motion for Summary Judgment filed by Waters and Depp, a jury

determined that both Nassan and Curry had violated Ellerbe's rights under the Fourth and

Fourteenth Amendments to the United States Constitution. CV-03-223, Doc. No. 219.

Hickenbottom was awarded compensatory damages in the amount of $4,004,058.00. CV-03-

223, Doc. No. 223. He was also awarded a total of $24,000,000.00 in punitive damages, which

was evenly split between Nassan and Curry. *Id.*

## III.  DISCUSSION

Baranowski's Motion for Reconsideration is based on two separate issues.[1]  First, Baranowski argues that the Court erred in determining that Waters and Depp had not intelligently waived one aspect of their statute of limitations defense (i.e., the argument that the filing of the praecipe in a Pennsylvania state court did not toll the running of the statute of limitations for purposes of this action).  Doc. No. 63 at ¶¶ 3-23.  Second, he contends that the Court erred in concluding that the "speech" for which he was constructively discharged was made pursuant to his "official duties" and, hence, was not protected by the First and Fourteenth Amendments for purposes of employer discipline.[2]  *Id.* at ¶¶ 24-34.  These issues will be addressed seriatim.

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  The United States Court of Appeals for the Third Circuit has held that a prior judgment may be altered or amended if the party asking for reconsideration of that judgment can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the judgment in question was entered; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Baranowski appears to base his Motion for Reconsideration on the need to

---

[1]The Court assumes familiarity with its prior memorandum opinion in this case, and will not repeat the entire analysis set forth in that opinion.  *Baranowski v. Waters*, 2008 WL 728366, 2008 U.S. Dist. LEXIS 21301 (W.D.Pa. March 18, 2008).  The analysis in this opinion will consist only of matters necessary for disposing of Baranowski's Motion for Reconsideration.

[2]The Court acknowledges the Defendants' argument that Baranowski was not "constructively discharged."  Doc. No. 24, pp. 19-20.  Nevertheless, for purposes of the instant Motion for Reconsideration, the Court assumes *arguendo* that Baranowski was constructively discharged.  *Baranowski*, 2008 WL 728366, at *8, 2008 U.S. Dist. LEXIS 21301, at *20, n. 3.

correct a clear error of law or fact with respect to the statute of limitations issue and on the

availability of new evidence (i.e., testimonial evidence from the *Hickenbottom* trial) with respect

to the First Amendment issue.

**A.  The Application of the Statute of Limitations**

### *The Effect of the Praecipe on the Instant Action*

The dispute concerning the application of the statute of limitations in this case can only

be understood by reference to the procedural history of the present controversy.  Depp initiated

six "Use of Force or Complaint Reception and Processing Worksheets" against Baranowski

between March 3, 2003, and March 11, 2003.  Doc. Nos. 45, ¶ 40, 49, ¶ 40.  Four of these

complaints were sustained by Waters on June 30, 2003, which was the date on which Waters

allegedly told Baranowski that his job was in jeopardy.  Doc. No. 26-10, pp. 122-125.  In order to

avoid being discharged, Baranowski gave the PSP his "notice of retirement" on July 7, 2003.

Doc. Nos. 45, ¶ 49, 49, ¶ 49.  Waters apparently sustained the other two complaints at some point

during the following three to four months.  *Id.*, ¶ 42.

Congress did not establish a statute of limitations for actions brought pursuant to § 1983.

Therefore, the Court must resort to 42 U.S.C. § 1988(a), which the United States Supreme Court

has construed to require the application of the relevant state's statute of limitations for personal

injury actions in actions brought under § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985).

In Pennsylvania, the applicable limitations period is two years.  42 Pa.C.S. § 5524(2), (7).

The first action taken by Baranowski against Waters and Depp occurred on May 23,

2005.  On that date, Baranowski filed a praecipe for a writ of summons against Waters and Depp

in the Court of Common Pleas of Fayette County, Pennsylvania.  Doc. No. 38-9, pp. 2-3.  Under

Pennsylvania law, this action was sufficient to commence a civil action against Waters and Depp in the Court of Common Pleas. *Pa. R. Civ. P. 1007.* Although the praecipe was filed *less* than two years after Waters sustained the complaints which had been lodged against Baranowski, it was filed *more* than two years after Depp initiated those complaints.

On September 30, 2005, Baranowski commenced this action against Waters and Depp, alleging violations of the First and Fourteenth Amendments. Doc. No. 1. The case was originally assigned to Judge Thomas Hardiman, who was a member of this Court. A status conference was held before Judge Hardiman on November 3, 2006. Doc. No. 11. The record indicates that no court reporter was present for this status conference. *Id.*

A status conference was held before the undersigned Judge on April 27, 2007.[3] A court reporter was present for this status conference. Baranowski has presented a transcript of this status conference in support of his Motion for Reconsideration. Doc. No. 63-2. A close examination of this discussion reveals that the parties had ascertained that it would be a waste of judicial resources for Baranowski to file a complaint in the Court of Common Pleas, only to have the Defendants remove the case to this Court at some later point. On that occasion, counsel for Baranowski stated that if the filing of the praecipe had not tolled the statute of limitations

---

[3]On January 9, 2007, President George W. Bush nominated Judge Hardiman for a seat on the United States Court of Appeals for the Third Circuit. Presidential Nomination: Thomas Michael Hardiman, online at http://www.whitehouse.gov/news/nominations/672.html (as visited June 16, 2008). That same day, President Bush nominated the undersigned Judge for a seat on this Court. Presidential Nomination: Nora Barry Fischer, online at http://www.whitehouse.gov/news/nominations/505.html (as visited June 16, 2008). The undersigned Judge was confirmed by the United States Senate on February 14, 2007. *Id.* Shortly thereafter, on March 15, 2007, Judge Hardiman was confirmed for a seat on the Court of Appeals. Presidential Nomination: Thomas Michael Hardiman, online at http://www.whitehouse.gov/news/nominations/672.html (as visited June 16, 2008). Both Judge Hardiman and the undersigned Judge were sworn into office on April 5, 2007. This case was then reassigned to the undersigned Judge.

applicable to this action, the action in the Court of Common Pleas could still be pursued. *Id.* at 4. Counsel for the Defendants observed that, since he would remove the original case to this Court in any event, it would be "silly" for him to raise the timeliness argument in this case. *Id.* He also stated that his clients would not raise an "error of technicality" that did not have an impact on their substantive rights. *Id.*

Four months later, on August 23, 2007, Waters and Depp filed a Motion for Summary Judgment. Doc. No. 23. In support of their Motion for Summary Judgment, the Defendants relied on Pennsylvania's two-year statute of limitations. They pointed out that this action had clearly been commenced beyond the expiration of the statute of limitations, and that it could be deemed to have been timely commenced only if the filing of the praecipe were viewed as having "constructively" commenced this action. Doc. No. 24, p. 3. As the Defendants put it, this action could be rendered timely only if the "antecedent state court action" constituted a "proper substitute" for the timely commencement of the action in this Court. *Id.* The Defendants went on to state that the tardy filing of the action in this Court posed a potential hurdle to this Court's subject matter jurisdiction, thereby placing the onus on the Court to examine the issue further. *Id.* at 3-4. In addition to this argument, the Defendants raised two additional arguments concerning the statute of limitations. First, they argued that any claims against Depp were time-barred regardless of whether the entire action was time-barred, since his initiation of the disciplinary complaints against Baranowski had occurred more than two years prior to the filing of the praecipe. *Id.* at 4-5. Second, they contended that Baranowski had not complied with Pennsylvania Rule of Civil Procedure 422, which required him to serve the Pennsylvania Office of the Attorney General as well as the Defendants personally. Doc. No. 48 at 14, ¶ 7.

In his responsive brief, Baranowski refuted each of the arguments raised by the Defendants. With respect to the question of whether the entire action was barred by the statute of limitations, he argued that, under Pennsylvania law, the filing of the praecipe had been sufficient to commence an action against Waters and Depp. Doc. No. 43 at 12-13. He went on to argue that Rule 422 was inapplicable to this action, since Waters and Depp were being sued in their individual capacities rather than in their official capacities. *Id.* at 13. Finally, he asserted that the claims against Depp had been timely filed, given that his constructive discharge had not occurred until July 2003. *Id.* at 13-14. Neither Baranowski nor the Defendants made any reference in their filings to the existence of an understanding whereby the Defendants had agreed to waive their timeliness argument concerning the relationship between the timely filing of the praecipe and the untimely commencement of this action in order to avoid the need for further proceedings in the Court of Common Pleas.

In a memorandum opinion dated March 18, 2008, this Court granted the Defendants' Motion for Summary Judgment on two alternative grounds. First, the Court concluded that the entire action was barred by the statute of limitations. *Baranowski*, 2008 WL 728366, at *4-12. Second, the Court determined that Baranowski's "speech," though constitutionally protected from sovereign governmental actions, did not enjoy constitutional protection from employer discipline under the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *Id.* at *13-27. Baranowski's Motion for Reconsideration challenges both of these alternative holdings.

In the prior opinion, the Court expressed disagreement with the Defendants' characterization of the statute of limitations issue as a jurisdictional issue. *Baranowski*, 2008

WL 728366, at *4. Nevertheless, because the Defendants advanced arguments concerning the statute of limitations, the Court believed that they were raising it as an affirmative defense (even if they erroneously believed that it was a jurisdictional matter subject to this Court's *sua sponte* consideration). *Id.* Although the Defendants appeared to have placed the emphasis of their argument on their assertion that the claims against Depp were time-barred under the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and the Court of Appeals' decision in *O'Connor v. City of Newark*, 440 F.3d 125 (3d Cir. 2006), the Court found it unnecessary to decide that question, since it was clear that the entire action had been untimely filed. *Id.* at *5-6. The Court assumed *arguendo* (without deciding) that the event which had triggered the beginning of the two-year limitations period had been Baranowski's "constructive discharge" on July 7, 2003. *Id.* at *7. No distinction was made between Waters and Depp, since the Court was convinced that the action as a whole was time-barred, including the claims asserted against Waters. *Id.*

Critical to the Court's decision was a determination that the Defendants had not waived their statute of limitations defense. *Id.*, n. 4. Although the Defendants appeared to be under the incorrect impression that the Court had an obligation to examine the statute of limitations issue *sua sponte*, the Court believed that the Defendants had sufficiently developed the issue (albeit incorrectly) to raise it for the Court's consideration. *Id.* at *4-7. Relying on the Supreme Court's decision in *Day v. McDonough*, 126 S.Ct. 1675 (2006), the Court concluded that the Defendants' mischaracterization of the statute of limitations as a jurisdictional requirement did not preclude the Court's consideration of whether the action as a whole (rather than simply the claims against Depp) was time-barred. *Id.* At that point, it appeared to the Court that both parties had

incorrectly understood the applicable law. It seemed as though Baranowski believed that the filing of the praecipe in a Pennsylvania court had tolled the statute of limitations for purposes of this action, and that the Defendants believed that this Court's jurisdiction was somehow threatened by the untimely filing of the present lawsuit. For the reasons given in the prior opinion, it is clear that the filing of the praecipe did not toll the statute of limitations for purposes of this action. *Id.* at *8-12. It is likewise clear that the statute of limitations is an affirmative defense that is subject to waiver, and that it has no bearing on the Court's subject matter jurisdiction. *Id.* at *4. The parties do not dispute either of these propositions at this stage of the litigation.

As noted above, Baranowski filed the pending Motion for Reconsideration on March 27, 2008. Doc. No. 63. In support of this motion, he argued that the Defendants had partially waived their statute of limitations defense at the November 3, 2006, status conference before Judge Hardiman. *Id.* at 3-4, ¶¶ 8-13. According to Baranowski, his counsel had informed both Judge Hardiman and opposing counsel that if the Defendants intended to argue that the statute of limitations had not been tolled by the filing of the praecipe, he would file a complaint in the Court of Common Pleas. *Id.* at 3, ¶ 10. Counsel for the Defendants allegedly responded by saying that if Baranowski filed a complaint in the Court of Common Pleas, the Defendants would remove the action to this Court pursuant to 28 U.S.C. § 1441. *Id.* at 3-4, ¶ 11. Baranowski contended that the parties had agreed that such a series of actions would serve only to waste time and judicial resources, delaying resolution of this controversy and increasing the costs of the litigation. *Id.* at 4, ¶ 12. Thus, according to Baranowski, the Defendants agreed that the filing of the praecipe would be considered to have tolled the statute of limitations for purposes of this

action. *Id.*

In their response to Baranowski's Motion for Reconsideration, the Defendants argue that they had not waived any of their statute of limitations arguments, and that they had been under a misperception that the filing of the praecipe had, in fact, tolled the statute of limitations for purposes of this action. Doc. No. 64 at 1-3, ¶¶ 1-4. They further argued that, given the way in which the issue had been briefed by the parties, it was clear that neither party had *treated* their informal understanding as a waiver of the statute of limitations defense on the part of the Defendants. *Id.* at 3-4, ¶¶ 5-8. Hence, the Defendants dispute Baranowski's assertion that they had intelligently waived their statute of limitations defense with respect to the question of whether the filing of the praecipe had tolled the statute of limitations applicable to this action.

Baranowski proceeded to file a complaint in the Court of Common Pleas of Fayette County, where the praecipe had been filed. *Baranowski v. Waters*, CV-08-544, Doc. No. 1-2. The Defendants removed that action to this Court on April 18, 2008. CV-08-544, Doc. No. 1. Consequently, the action that was commenced by the filing of the praecipe in the Court of Common Pleas is currently pending before this Court.

On April 17, 2008, one day before the action in the Court of Common Pleas was removed to this Court, an oral argument was held concerning the instant Motion for Reconsideration. At the oral argument, counsel for Baranowski acknowledged that he had not clearly articulated, in his prior filings, that the parties had already come to a mutual understanding as to the tolling issue as of November 3, 2006. Doc. No. 70-2, p. 8. Nevertheless, he indicated that he had not focused on that issue because he simply did not believe that the Court would seriously consider the Defendants' argument concerning subject matter jurisdiction, since it was clear that the

statute of limitations was an affirmative defense subject to waiver. *Id.* Counsel for the Defendants indicated that his comments at the April 27, 2007, status conference had simply reflected a misunderstanding of the law rather than an intelligent waiver of the statute of limitations defense. *Id.* at 13-17. In other words, the Defendants contend that they honestly believed that the filing of the praecipe had, in fact, tolled the statute of limitations applicable to this case, and that they had acquiesced in Baranowski's position at the status conference because they did not believe that they had a legitimate argument to the contrary.

At the outset, the Court takes note of a few preliminary points of agreement between the parties. First, Baranowski concedes that nothing said by counsel for the Defendants constituted a comprehensive waiver of the statute of limitations defense. Doc. No. 70-2, p. 9. Baranowski's argument concerning waiver is limited to the question of whether the entire action is barred by the statute of limitations, and is not broad enough to encompass the other two statute of limitations arguments (i.e., the issues concerning the timeliness of the claims against Depp and the perceived lack of compliance with Rule 422). Second, neither party contends that, under the applicable law, the filing of the praecipe actually tolled the statute of limitations applicable to this action. Although that may have been the parties' belief prior to this Court's decision of March 18, 2008, they do not question the accuracy of the Court's resolution of that issue, except with respect to the issue of waiver. Third, the parties likewise agree with, and do not question, the Court's determination that the statute of limitations is an affirmative defense that is subject to waiver, and which has no effect on the Court's subject matter jurisdiction. The Court's analysis proceeds with these undisputed points in mind.

Baranowski's argument in support of his Motion for Reconsideration appears to be

twofold.  First, he argues that the Court erred in concluding that the Defendants did not

intelligently waive their statute of limitations defense.  Doc. No. 63 at 7, ¶¶ 18-19.  Second, he

contends that the statute of limitations defense in this case is defeated by principles of equitable

tolling or estoppel.  *Id.*, ¶ 20.  Before addressing the question of whether a waiver actually

occurred, the Court will address the equitable principles involved, including the question of

whether the statute of limitations in this case was constructively tolled by the filing of the

praecipe.

Baranowski's claims are before the Court pursuant to § 1983.  By virtue of § 1988(a),

Pennsylvania's two-year statute of limitations is a binding rule of law in this case.  *Board of*

*Regents v. Tomanio*, 446 U.S. 478, 484 (1980).  The Supreme Court has admonished courts that

a particular state's statute of limitations should not be abstracted from the broader body of law of

which it is a part.  Federal law's borrowing of a state's *limitations period* also entails its

borrowing of that state's law with respect to tolling.  *Hardin v. Straub*, 490 U.S. 536, 538-544

(1989).  Because § 1988(a) provides for the borrowing of state law only where, *inter alia*, "the

same is not inconsistent with the Constitution and laws of the United States," federal tolling

doctrines can be invoked in circumstances in which the applicable state tolling doctrines

"contradict federal law or policy."  *Lake v. Arnold*, 232 F.3d 360, 370 (3d Cir. 2000).  In this

case, however, neither party contends that Pennsylvania's tolling rules are inconsistent with

federal law.  Therefore, the Court's analysis of the tolling issue will proceed in accordance with

Pennsylvania law.[4]

---

[4]Federal law controls when a § 1983 cause of action accrues.  *Howard v. Mendez*, 304 F.Supp.2d 632, 635 (M.D.Pa. 2004).  For purposes of this analysis, the Court assumes *arguendo* that Baranowski's causes of action against both Waters and Depp accrued on July 7, 2003.

Embedded within Pennsylvania law is a policy which strongly favors the strict application of statutes of limitations. *Glenbrook Leasing Co. v. Beasang*, 839 A.2d 437, 441 (Pa.Super.Ct. 2003). Nevertheless, Pennsylvania law permits a time limitation, such as the two-year time limitation at issue in this case, to be "extended to relieve fraud or its equivalent." 42 Pa.C.S. § 5504(b). "Pennsylvania's doctrine of fraudulent concealment is 'based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts.'" *Hoppe v. Smithkline Beecham Corp.*, 437 F.Supp.2d 331, 336, n. 4 (E.D.Pa. 2006), quoting *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). In this context, the word "fraud" has a relatively broad meaning. *Wawrzynek v. Statprobe, Inc.*, 422 F.Supp.2d 474, 479 (E.D.Pa. 2005). "Fraud" can occur even where there is no intent to deceive, such as where the defendant's actions or words unintentionally deceive the plaintiff. *Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 464 (Pa.Super.Ct. 2007). Regardless of whether the "fraud" involved is intentional or unintentional, the defendant must commit some affirmative act of concealment upon which the plaintiff justifiably relies. *Lange v. Burd*, 800 A.2d 336, 339 (Pa.Super.Ct. 2002). The party asserting the existence of fraudulent concealment bears the burden of proving it by "evidence that is clear, precise and convincing." *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964).

In light of the transcript of the status conference of April 27, 2007, the Court has little trouble concluding that the representations made by the Defendants' counsel directly influenced Baranowski's decision to pursue his claims in this Court, rather than to file a complaint in the Court of Common Pleas. Although it was not apparent to the Court before the filing of the instant Motion for Reconsideration, it is now clear that Baranowski's counsel knew that, at a

minimum, the filing of the praecipe *may* not have tolled the statute of limitations applicable to this action. Doc. No. 63-2 at 3-5. Had the Defendants clearly and unequivocally waived their statute of limitations defense (at least with respect to the tolling issue) in its filings, the Court would not have concluded that no intelligent waiver of the issue had occurred. *Baranowski*, 2008 WL 728366, at *4-7. On the other hand, it has now become apparent that had the Defendants not indicated that they were willing to waive the defense, Baranowski would have filed a complaint in the Court of Common Pleas. Indeed, that is precisely what he did after the issuance of this Court's prior memorandum opinion. *Baranowski v. Waters*, CV-08-544. Thus, it is obvious that the Defendants' representations, rather than a simple misunderstanding of the law on the part of Baranowski's counsel, led Baranowski to proceed as he did.

The doctrine of equitable tolling, however, does not fit neatly within the facts of this case. In virtually every context discovered by the Court, Pennsylvania's fraudulent concealment/estoppel doctrine has been applied where the actions of a defendant have caused a plaintiff not to commence an action within the applicable limitations period. *Gravinese v. Johns-Manville Corp.*, 471 A.2d 1233, 1238 (Pa.Super.Ct. 1984)("In general, this requires that a defendant have done something amounting to an affirmative inducement to plaintiff to delay *bringing the action*.")(emphasis added). No action of the Defendants caused Baranowski's late filing of this action. Baranowski's complaint in this case was filed on September 30, 2005. Doc. No. 1. More than an entire year elapsed between the commencement of this action and the November 3, 2006, status conference before Judge Hardiman. There is no allegation that the Defendants had indicated prior to that status conference that they were willing to waive their statute of limitations defense in the interest of judicial economy. Baranowski could have filed

his complaint in the Court of Common Pleas instead of filing it in this Court. There is good reason to assume, based on all indications from the record, that the case would have been promptly removed to this Court in any event. Moreover, it was solely the decision of Baranowski to toll the statute of limitations by filing a praecipe in the Court of Common Pleas rather than by filing a complaint in this Court. If unintentional "fraud" occurred in this case, it did not occur until *after* the statute of limitations had already run. No representation by the Defendants caused Baranowski to commence two separate actions, one of which was timely and the other of which was untimely. The Defendants' representations affected Baranowski's decisions after-the-fact. The Court is aware of no instance in which such later representations by a defendant have been viewed as a basis for retroactively tolling a statute of limitations. Indeed, the timebound nature of Pennsylvania's tolling doctrine illustrates that such retroactive equitable tolling is legally impossible. *Hoppe*, 437 F.Supp.2d at 336, n. 4 ("A defendant's fraudulent concealment will not absolutely bar the limitations defense, but rather, will toll the limitations period only until such *time* as the plaintiff discovers or reasonably should have discovered the fraud.")(emphasis added). Hence, the doctrine of equitable tolling cannot be applied in this case.[5]

The inquiry, of course, does not end there. Although this action was clearly filed after the

---

[5]The Court must apply Pennsylvania's tolling rules in this case, since there is no indication that such rules are inconsistent with federal law. *Salahuddin v. Coughlin*, 647 F.Supp. 49, 52 (S.D.N.Y. 1986). If the less rigid federal tolling rules were applicable, an argument could be made that such rules are broad enough to embrace the circumstances of this case, in which Baranowski contends that the filing of the praecipe constructively (i.e., equitably) tolled the statute of limitations applicable to this action. *Podobnik v. United States Postal Service*, 409 F.3d 584, 591 (3d Cir. 2005)(permitting equitable tolling "where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum"). Nevertheless, Baranowski does not argue, nor could the Court conclude, that Pennsylvania's tolling rules are inconsistent with federal law. Therefore, § 1988(a) borrows Pennsylvania's tolling rules as "binding rules of law." *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980). Given that Pennsylvania law generally permits tolling only "to relieve fraud or its equivalent," the doctrine of equitable tolling cannot be applied in this case. 42 Pa.C.S. § 5504(b).

18

two-year statute of limitations had expired, the Defendants had the option of waiving their statute

of limitations defense. In the prior memorandum opinion, the Court concluded that no intelligent

waiver of the defense had occurred. *Baranowski*, 2008 WL 728366, at *4-7. That determination,

however, was made before the Court was presented with argument based on the discussions

between the parties' counsel before Judge Hardiman. The Court acknowledged that if the action

commenced in the Court of Common Pleas had been properly removed pursuant to § 1441, it

could have proceeded in this Court. *Id.* at *8. In that situation, the action in this Court would

have been the same action that was commenced by the filing of the praecipe. It was not clear to

the Court why Baranowski believed that this action should have been treated in the same manner

as a removed case. *Id.* Nevertheless, in light of the exchange between counsel that has been

called to the Court's attention, it appears that the parties reached an understanding that, in the

interest of judicial economy, they would treat this case as a removed case in order to avoid

additional costs and unnecessary delays. At the oral argument, counsel for Baranowski

explained:

> To put this into the exact context in which it arose, at the very first status
> conference Mr. Mericli asserted, and Judge Hardiman asked, was there a statute of
> limitations issue? To which Mr. Mericli said, yes, there is. It is not timely filed.
> To which I responded, it is not timely filed only if the filing of the writ in State
> Court doesn't toll the statute of limitations. But, here's what I am going to do
> because I don't know the answer to that legally. I am not going to go research it.
> I am going to go file my complaint in State Court and we won't have an issue
> here. To which, Mr. Mericli said, well, if he does that, I am going to remove. To
> which the Court said, well, that doesn't seem to make much sense because we are
> just going to be right back here sometime later. So, everybody agreed that we
> weren't going to do that because it was a waste of judicial time resources and the
> time of the parties. There was never any misunderstanding of the law. The law
> was–nobody made an analysis. We assumed that perhaps it didn't toll the statute
> of limitations, but we were going to get past that.

Doc. No. 70-2, pp. 29-30.  The Court has no reason to doubt what Baranowski's counsel said at the oral argument, since it was not contradicted by counsel for the Defendants.  Although counsel for the Defendants stated that he had not fully ascertained the proper resolution of the issue in strictly legal terms (i.e., that the filing of the praecipe had not actually tolled the statute of limitations applicable to this case), he did not deny what counsel for Baranowski relayed to the Court concerning the November 3, 2006, status conference before Judge Hardiman.  *Id.* at 13-17.

In support of his Motion for Reconsideration, Baranowski has presented the transcript of the status conference held before the undersigned Judge on April 27, 2007.  At the status conference, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Now, I did note in the answer that one of the defenses that is being raised is the statute of limitations. |
| MR. O'BRIEN: | Yes. |
| THE COURT: | Perhaps you, Mr. O'Brien, and then you, Mr. Mericli, can comment on that.  Is there an applicable statute of limitations here? |
| MR. O'BRIEN: | There is a statute of limitation argument.  I don't think it's going to affect the outcome of the case.  I apologize to Kem.  He asked me to, but I have been at depositions all morning, and I didn't have a chance to get it together.  We had initiated the case, Judge, by filing a writ of summons in Washington County.  We served the writ of summons in a timely fashion, and we do have the documentation of that.  I do think I had previously sent it to Kem, but whether I did or didn't, I will supply it to Mr. Mericli to establish that we filed the writ in a timely fashion and that it was served and that if we did that, then I think we both agree that the statute of limitations was tolled and the filing of this lawsuit was timely. |
| MR. MERICLI: | We agree. |

MR. O'BRIEN:          If I didn't do that, if there's any defect in the record, then Mr. Mericli will have an argument that could be made, which I don't think is the case.

THE COURT:           You, Mr. O'Brien, are going to forward this information to Mr. Mericli so he can take a look at it?

MR. O'BRIEN:          Yes. If I get to do it, I will do it today; if not, then within a week.

MR. MERICLI:          I agree with Mr. O'Brien. If, in fact, although theoretically this case was filed out of time and is not technically linked to the act that is the state action, for me to claim that the statute of limitations bars it I think would be an error of technicality, and my clients and I would not do that.

MR. O'BRIEN:          The net effect, if there was validity to that argument would be we would have a state court case still pending.

MR. MERICLI:          Which I would remove.

MR. O'BRIEN:          And we would file the exact same claims.

MR. MERICLI:          Which would just be silly.

THE COURT:           It's likely that argument is going to go away.

MR. O'BRIEN:          That's my belief.

THE COURT:           Mr. Mericli, am I right in that supposition?

MR. MERICLI:          Yes, Your Honor, a writ of summons properly served will end the problem.

Doc. No. 63-2 at 3-5.[6] The discussion which occurred on that occasion clearly indicates that the

parties had come to an understanding that it would be better to proceed with the instant action in

this Court rather than to proceed with an identical action in the Court of Common Pleas, which

---

[6]The Court notes that counsel for Baranowski mistakenly referred to Washington County as the venue for the original action, which was actually commenced in Fayette County.

21

would be removed to this Court. Counsel for the Defendants expressly stated that his clients would not raise an "error of technicality," since the result would be the filing of an identical complaint in the Court of Common Pleas, and its subsequent removal to this Court, to cure the procedural defect.

In light of what was said at the status conference before the undersigned Judge and the representations of counsel as to a similar exchange before Judge Hardiman, the Court is now convinced that the Defendants intelligently waived their statute of limitations defense with respect to the issue of tolling. With the benefit of hindsight, the Court notes that the understanding reached by the parties, though informal in many respects, was reflected in their briefs.[7] When the Defendants raised the issue of tolling in their original brief, they suggested that the Court was required to make the "ultimate decision" as to whether this action was barred by the statute of limitations. Doc. No. 24 at 4. They did so, however, within the context of a challenge to the Court's subject matter jurisdiction. This Court, like all federal courts established under Article III, exercises the "judicial Power of the United States." U.S. CONST. art. III, § 1. Article III courts are courts of limited jurisdiction, possessing only the adjudicatory jurisdiction permitted under the Constitution and supplied by an Act of Congress. *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375, 377 (1994). Where subject matter jurisdiction is questionable, a federal court has an obligation to consider the issue *sua sponte* even if neither party raises a jurisdictional challenge. *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 607, n. 6 (1978). Thus, any agreement between the parties to circumvent the

---

[7]It would have been better practice for the parties to file a formal stipulation conveying their mutual understanding to the Court, so that there would have been no ambiguity in the record as to the issue of tolling.

process of removing the action in the Court of Common Pleas to this Court by proceeding with this untimely-filed action could not have operated to confer jurisdiction on this Court if the issue of timeliness had affected this Court's jurisdiction. As the Court has already held, the untimely filing of this action does not pose jurisdictional problems. *Baranowski*, 2008 WL 728366, at *4-7. Nevertheless, the Defendants' decision to raise the timeliness issue within the context of a jurisdictional challenge (rather than raising it as an affirmative defense) makes sense *only* if they had waived their statute of limitations defense. While an affirmative defense is subject to waiver, the issue of subject matter jurisdiction is not. Since the Court was unaware of the potential waiver in this case, it construed the Defendants' meritless jurisdictional challenge as a misguided attempt to raise a meritorious affirmative defense.[8] *Id.*

In his responsive brief, Baranowski argued that the filing of the praecipe had tolled the statute of limitations applicable to this action. Doc. No. 43 at 12. He pointed out that a case removed from a Pennsylvania court to a federal court pursuant to § 1441 is deemed to have been timely filed where a praecipe has been filed within the limitations period. *Id.* at 13. In the prior memorandum opinion, the Court acknowledged that this argument was correct with respect to removed cases. *Baranowski*, 2008 WL 728366, at *8. The Court ultimately rejected Baranowski's argument because this action was *not* a removed case which had been timely commenced in a Pennsylvania court, but rather a case which had been untimely commenced in this Court. *Id.* ("The problem with Baranowski's argument, however, is that it begs the question.

---

[8]Although the statute of limitations issue was raised as a jurisdictional issue, the Court did not treat it as such because it is actually an affirmative defense. While it is the parties who are responsible for raising issues for the Court's consideration, it is the function of the Court "to apply the law as it is, not just as the parties describe it." *McFarland v. Henderson*, 307 F.3d 402, 409 (6th Cir. 2002).

This case was not *removed* from the Court of Common Pleas of Fayette County pursuant to 28 U.S.C. § 1441. Instead, it was *commenced* in this Court on September 30, 2005, when Baranowski filed a complaint against the Defendants in accordance with Federal Rule of Civil Procedure 3.")(emphasis in original). While Baranowski's incomplete argument did not make sense to the Court at the time, it makes sense now because of the understanding which had been reached by the parties. Since the Defendants had indicated (albeit informally) that they were waiving their statute of limitations defense in order to avoid the need for actual removal of the timely-commenced action, the parties were proceeding on the assumption that this case would proceed as the functional equivalent of a removed case. Unfortunately, this understanding was signaled to the undersigned Judge at the status conference of April 27, 2007 (the transcript of which was neither entered on the docket nor referenced by the parties prior to the issuance of this Court's decision of March 18, 2008), and never confirmed. Had the Court been fully aware of the parties' understanding, it would have concluded that the Defendants had, in fact, waived the statute of limitations defense.

In concluding that the Defendants have waived their statute of limitations defense, the Court does not imply that counsel for the Defendants has been dishonest in his representations to the Court. Quite the contrary is true. The Court acknowledges that neither party actually researched the question of whether the filing of the praecipe had tolled the statute of limitations applicable to this action. Doc. No. 70-2 at 13-17, 30. Nevertheless, the failure of the parties to fully research the issue of tolling is not dispositive. In light of what has been relayed to the Court in the aftermath of the March 18, 2008, decision, it is clear that the parties had decided, before the undersigned Judge was presiding over this case, that it made no difference whether the

praecipe had tolled the statute of limitations because, even if it had not, the Defendants had no intention of raising the issue. When they later raised the issue, it was only within the context of an attempted challenge to the Court's subject matter jurisdiction (which the Court construed as the raising of an affirmative defense mischaracterized as a jurisdictional challenge). Doc. No. 24, pp. 2-4. Even though counsel for the Defendants truthfully contends that he never researched the issues surrounding tolling, it is clear that he refrained from doing so only because he did not wish to delay the resolution of the present controversy by forcing Baranowski to proceed in the Court of Common Pleas, only to have the case removed to this Court in any event. The decision not to delve into this issue was *itself* an intelligent waiver.

### The Application of Pennsylvania Rule of Civil Procedure 422

It remains to be determined whether this action is time-barred, in whole or in part, for other reasons. The Defendants previously intimated that they were entitled to the dismissal of this action on the ground that Baranowski did not fully comply with Rule 422. Doc. No. 48, p. 14, ¶ 7. Nevertheless, they indicated that Baranowski's failure to comply with Rule 422 constituted only a "technical defect in service."[9] *Id.* They do not deny, nor have they ever

---

[9]Pennsylvania Rule of Civil Procedure 422 provides:
Rule 422. The Commonwealth and Political Subdivisions
    (a) Service of original process upon the Commonwealth or an officer of the Commonwealth, or a department, board, commission or instrumentality of the Commonwealth, or a member thereof, shall be made at the office of the defendant and the office of the attorney general by handing a copy to the person in charge thereof.
    (b) Service of original process upon a political subdivision shall be made by handing a copy to
        (1) an agent duly authorized by the political subdivision to receive service of process, or
        (2) the person in charge at the office of the defendant, or
        (3) the mayor, or the president, chairman, secretary or clerk of the tax levying body thereof, and in counties where there is no tax levying body, the chairman or clerk of the board of county commissioners.
    (c) This rule shall not apply to an appeal from an administrative determination, order or decree of such officer, department, board, commission or instrumentality.
*Pa. R. Civ. P. 422.*

denied, that the Office of the Attorney General received actual notice of the action in the Court of Common Pleas. Doc. No. 24, pp. 2-3, n. 1. Consequently, the Defendants were not prejudiced by any defect in service (if, in fact, service was technically defective). Pennsylvania law disfavors dismissals on statute of limitations grounds for technical procedural deficiencies that do not prejudice defendants. *McCreesh v. City of Philadelphia*, 888 A.2d 664, 674 (2005)("Neither our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice."). Counsel for the Defendants acknowledged this at the oral argument. Doc. No. 70-2, pp. 21-22. The Court does not understand the Defendants to argue, at this point, that Baranowski's failure to comply with Rule 422 requires the dismissal of this action. Accordingly, there was no defect in service which requires the dismissal of this action.

### *The Timeliness of the Claims Against Depp*

The Defendants maintain that Baranowski cannot proceed against Depp because his actions against Baranowski (i.e., the initiation of the disciplinary complaints) were taken more than two years before the filing of the praecipe. In *Morgan*, a case involving Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*], the Supreme Court made a distinction between claims based on "discrete acts" of discrimination, which are individually actionable, and "hostile work environment" claims, which are actionable only because of the cumulative effect of multiple acts that, in and of themselves, do not otherwise violate Title VII. *Morgan*, 536 U.S. at 114-117. While a claim based on a discrete act of discrimination is time-barred after the running of the charging period prescribed by 42 U.S.C. § 2000e-5(e)(1), "the entire time period of [a] hostile work environment may be considered by a court for the purpose of determining liability"

26

even if "some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117. In *O'Connor*, the Court of Appeals held that this distinction between "discrete act" claims and "hostile work environment" claims applies in "whatever statutory context" in which it may arise. *O'Connor*, 440 F.3d at 128. Thus, as a general matter, the line of demarcation established in *Morgan* applies in this case. Indeed, the Court of Appeals made it clear that *Morgan* applies in § 1983 cases. *Id.* ("The principles at work in *Morgan* apply with equal force to § 1983 claims.").

The inquiry in this case, however, is much more complicated. The general proposition that *Morgan* applies in this case does not necessarily mean that Baranowski's claims against Depp are time-barred. Baranowski's claims are clearly based on a theory of constructive discharge. Doc. No. 1, ¶¶ 10-11. The Court of Appeals recognizes such a theory of liability in the "First Amendment retaliation" context. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239-243 (3d Cir. 2006). Assuming that the Defendants are correct in their assertion that a constructive discharge (like an actual discharge) constitutes a "discrete act" under *Morgan*, it is unclear *when* Depp constructively *discharged* Baranowski. *Morgan*, 536 U.S. at 114, n. 7 ("There may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the *injury* occurs as opposed to when the *injury* reasonably should have been discovered.")(emphasis added). Regardless of whether Depp's initiation of disciplinary complaints against Baranowski constituted discrete First Amendment violations, it is clear that Baranowski's *constructive discharge* claims did not accrue until July 7, 2003. *Scott v. Lee County Youth Development Center*, 232 F.Supp.2d 1289, 1295 (M.D.Ala. 2002)(concluding that the applicable limitations

period in a constructive discharge case is measured from the date on which the aggrieved employee gives notice of his or her intention to resign). Moreover, it is also clear that Depp's initiation of such complaints, which were later sustained by Waters, contributed to the constructive discharge. The Court acknowledges that there is language in *O'Connor* which suggests that actions such as those taken by Depp constitute "discrete acts" under *Morgan*. *O'Connor*, 440 F.3d at 127 (including "wrongful discipline" and "wrongful accusation" within a list of examples of "discrete acts"). Nevertheless, a constructive *discharge* does not occur (and does not become actionable) merely because a termination or disciplinary process is *commenced*. *Cigan v. Chippewa Falls School District*, 388 F.3d 331, 334 (7th Cir. 2004)("So if Cigan is right, and *every* notice of intent to commence a process that could lead to discharge is a constructive discharge right then and there, a lot of employees who stick it out will be shocked to learn that, when the actual decision is made and communicated, the time to file a charge of discrimination has already expired!")(emphasis in original). For this reason, some courts have intimated that constructive discharge claims are arguably more analogous to hostile work environment claims than they are to "discrete act" claims. *Hazel v. Laborers' Health & Safety Fund of North America*, 478 F.3d 364, 370 (D.C.Cir. 2007).

It is evident from the discussion in *O'Connor* that the Court of Appeals intended for the *Morgan* framework to be applied in the § 1983 context in the same way in which it would be applied in the Title VII context. *O'Connor*, 440 F.3d at 128-129. In a case such as this, which is predicated on a theory of constructive discharge, a determination that the claims against Depp are time-barred would cause a divergence between § 1983 and Title VII rather than the uniformity sought by *O'Connor*. If Baranowski's cause of action arose under Title VII, his action would be

28

brought against the PSP rather than against Waters and Depp.[10]  Title VII imposes liability on "employers" rather than on individual supervisors.  *Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 183-184 (3d Cir. 1997); *Barb v. Miles, Inc.*, 861 F.Supp. 356, 359 (W.D.Pa. 1994).  On the other hand, an action under § 1983 could not be brought against the PSP, which is not a "person" thereunder.[11]  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  In either case, the running of the limitations period for constructive discharge would begin when the employee's decision to resign is communicated to the employer, not when the disciplinary process is initially commenced.  *Cigan*, 388 F.3d at 334.  If Depp's initiation of disciplinary proceedings against Baranowski had been motivated by animus based on race, color, religion, sex, or national origin rather than by a desire to retaliate against him for speaking, the PSP would have been liable to Baranowski under Title VII for Depp's actions.  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 137-152 (2004).  The limitations period against the PSP would have started on July 7, 2003.  Since this case, like the analogous Title VII hypothetical, is based on a theory of constructive discharge, it would make no sense for the Court to hold that the claims against Depp (which would be timely against the PSP under Title VII) are time-barred in this § 1983 case merely because the individual who *commenced* the disciplinary process is someone other than the individual who *concluded* it.  This case illustrates why the *Morgan* framework, which was formulated with Title VII (and similar antidiscrimination statutes) in mind, may not

---

[10]The Court notes that the Supreme Court's leading "constructive discharge" case involved an action under Title VII against the PSP.  *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004).

[11]An action against the PSP under Title VII would not be barred by the Eleventh Amendment.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-456 (1976).  In contrast, an action against the PSP under § 1983 would be barred by the Eleventh Amendment, since the Supreme Court has not construed § 1983 as an abrogation of the States' Eleventh Amendment immunity.  *Howlett v. Rose*, 496 U.S. 356, 365 (1990).

be easily transportable to the § 1983 context in every instance. *Baranowski*, 2008 WL 728366, at

*6. In any event, the Court is not convinced that *O'Connor* requires the dismissal of the claims

against Depp under these circumstances, since the uniformity contemplated in that opinion would

be seriously undermined by the resulting divergence between constructive discharge claims under

Title VII and constructive discharge claims under § 1983.

Given the foregoing discussion, it is evident that this action is not barred by

Pennsylvania's two-year statute of limitations based on the record before the Court. Baranowski

has demonstrated, through uncontradicted evidence, that the Defendants waived their statute of

limitations defense with respect to the issue of tolling. Doc. No. 63-2, pp. 3-5. At the oral

argument, counsel for the Defendants unequivocally stated that the original action in the Court of

Common Pleas had been properly served, and that any failure on the part of Baranowski to

comply with Rule 422 was inconsequential. Doc. No. 70-2, pp. 21-22. Baranowski's

constructive discharge claims against Depp are not time-barred, since the limitations period did

not begin to run until July 7, 2003. Accordingly, the Court must grant Baranowski's Motion for

Reconsideration with respect to the statute of limitations rationale relied upon in this Court's

memorandum opinion of March 18, 2008. In so holding, the Court emphasizes that the

memorandum opinion must be vacated only insofar as it held that the Defendants had not

intelligently waived their statute of limitations defense as to the issue of tolling. *Baranowski*,

2008 WL 728366, at *4-7. The opinion continues to reflect the view of the Court in all other

respects. Indeed, today's decision is consistent with the Court's earlier observation that it is not

free to disregard an intelligent waiver of the statute of limitations defense. *Id.* at *4; *Day*, 126

S.Ct. at 1684, n. 11. A waiver having now been established, the Court is constrained to proceed

accordingly.

## B. The Merits of Baranowski's First Amendment Claims

In the prior memorandum opinion, the Court analyzed the merits of Baranowski's First Amendment claims. *Baranowski*, 2008 WL 728366, at *13-26. The Court adheres to that analysis, holding that the First and Fourteenth Amendments did not protect Baranowski from the retaliatory actions alleged in the complaint. For this reason, there is no need for the Court to repeat its prior evaluation of the substantive issues in this case, which remains largely unchanged. Nevertheless, the Court will address a few specific points raised by the parties at the oral argument and in their supplemental filings.

In the prior opinion, the Court held that Baranowski's speech did not enjoy constitutional protection from employer discipline.[12] *Id.* at *13-26. The basis for the Court's holding was the Supreme Court's recent decision in *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1955-1962 (2006), which held that the First and Fourteenth Amendments do not protect public employees from retaliation based on speech made pursuant to their official duties. The Court concluded that the statements upon which Baranowski bases his constitutional claims had been made pursuant to his official duties, thereby placing them outside of the scope of constitutional protection. In his Motion for Reconsideration, Baranowski takes issue with that determination, contending that the question should be submitted to a jury rather than decided by the Court. His argument is based

---

[12]The Court uses the phrase "from employer discipline" to qualify its statement that Baranowski's speech did not enjoy constitutional protection. The question of "constitutional protection" in this case is limited to the issue of employer discipline. In *Connick v. Myers*, 461 U.S. 138, 147 (1983), the Supreme Court stated that "an employee's false criticism of his employer on grounds not of public concern may be cause for his discharge but would be entitled to the same protection in a libel action accorded an identical statement made by a man on the street." The Court acknowledges that Baranowski's speech enjoyed constitutional protection for purposes other than employer discipline.

on language employed by the United States Court of Appeals for the Third Circuit in *Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007), referring to "the question of whether a particular incident of speech is made within a particular plaintiff's job duties [as] a mixed question of fact and law."

A First Amendment retaliation claim of this kind can be broken down into two general components which include a total of five specific questions. The first component requires a showing that the speech uttered by the public employee enjoys constitutional protection from employer discipline, and the second component requires the public employee to establish causation between that speech and the relevant act of retaliation. The question of constitutional protection involves a three-part inquiry. In order to enjoy constitutional protection, speech must be made by a public employee (1) in his or her capacity *as a citizen* (2) addressing a matter of *public concern* (3) under circumstances in which, on *balance*, the public employee's interest in speaking outweighs his or her employer's interest in workplace efficiency. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)("The problem in any case is to arrive at a *balance* between the interests of the teacher, *as a citizen*, in commenting upon *matters of public concern* and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.")(emphasis added). Where the speech at issue satisfies this test for constitutional protection, the inquiry turns to the issue of causation. In order to establish causation, a public employee must show that his or her speech was a substantial or motivating factor behind the challenged act of retaliation. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). If such a showing is made, the burden shifts to the defendant (i.e., the public employer) to establish by a preponderance of the evidence that it

would have taken the same action even in the absence of the employee's constitutionally

protected speech. *Id.*

It is clear that both components of the causation inquiry present questions of fact for the

jury. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). As was the case before, there

is no need for the Court to examine the issue of causation.[13] The second and third parts of the

inquiry as to constitutional protection are clearly questions of law for the Court. *McGreevy v.

Stroup*, 413 F.3d 359, 364 (3d Cir. 2005)(recognizing that it is the function of the court (1) to

determine whether the speech at issue addresses a matter of public concern and (2) to balance the

public employee's interest in speaking against the public employer's interest in workplace

efficiency). The only question is whether the first part of the test (i.e., the question of whether

the public employee's speech is made in his or her capacity *as a citizen*) is a question of law for

the Court or a question of fact for the jury. In support of his position that the issue should be

submitted to the jury, Baranowski relies on the Court of Appeals' reference to the inquiry as "a

mixed question of fact and law." *Foraker*, 501 F.3d at 240.

In order to understand the Third Circuit's observation, one must read its language in

context. The Third Circuit was discussing the decision of the United States Court of Appeals for

the Ninth Circuit in *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006). Speaking through Judge

Smith, the Third Circuit explained:

> The Ninth Circuit's remand of the question whether Freitag's letter of complaint
> to the Director was within her job duties illustrates the fact-intensive nature of this
> inquiry. Unlike the question of whether speech is protected by the First
> Amendment, the question of whether a particular incident of speech is made

---

[13]The Court acknowledges that the evidence, when viewed in the light most favorable to Baranowski, would
be sufficient to defeat the Defendants' Motion for Summary Judgment with respect to causation.

within a particular plaintiff's job duties is a mixed question of fact and law. Thus, as the Ninth Circuit held, the proper resolution of challenges to the designation of such speech is to defer to the district court, because "having presided over this and related litigation for several years, [it] may be in a better position to make the relevant factual determinations . . . ." *Freitag*, 468 F.3d at 546. Accordingly, Price and Warren's claims of retaliation based on the First Amendment are foreclosed because, as the District Court found, reporting problems at the FTU was within their official job duties.

*Foraker*, 501 F.3d at 240-241 (footnote omitted; brackets in original). The plain language of this

passage indicates that the Third Circuit's discussion of the inquiry concerned the level of

deference owed to the findings of a district court, not the question of whether the issue was more

amenable to resolution by a court or by a jury. Courts have sometimes used the term "mixed

question" to refer to a question that is clearly to be decided by a court, but which nevertheless

involves a fact-intensive inquiry. *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998)("On

the other hand, an assessment of the voluntariness of a *Miranda* waiver, like a probable cause or

reasonable suspicion determination, is a mixed question of law and fact that we review de

novo."). Thus, the Third Circuit's reference to the "as a citizen" inquiry as a "mixed question"

does not necessarily mean that it contemplated a role for the jury in conducting that inquiry.

Some of the pre-*Garcetti* Third Circuit decisions referred to the overall question of

whether a public employee's speech enjoys constitutional protection from employer discipline as

a question of law, without distinguishing between the different components of that question. *Hill

v. City of Scranton*, 411 F.3d 118, 125-127 (3d Cir. 2005). In *Garcetti*, the Supreme Court

provided very little guidance as to this issue. It was undisputed that the employee's speech had

been made pursuant to his official duties, so the Supreme Court acknowledged that it had "no

occasion to articulate a comprehensive framework for defining the scope of an employee's duties

in cases where there is room for serious debate." *Garcetti*, 126 S.Ct. at 1961. Only two specific guideposts were mentioned. First, the Supreme Court admonished that the question of whether speech is made pursuant to a public employee's official duties, or is made in his or her capacity as a citizen, is a "practical" inquiry that eschews reliance on formal job descriptions which "often bear little resemblance to the duties an employee actually is expected to perform." *Id.* at 1961-1962. Second, in response to Justice Souter's dissenting opinion, the Supreme Court acknowledged that "expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by [its] customary employee-speech jurisprudence," and that it was not deciding whether the rule established in *Garcetti* (i.e., that speech made pursuant to a public employee's official duties enjoys no First Amendment protection from employer discipline) was applicable to cases involving "speech related to scholarship or teaching." *Id.* at 1962. The Supreme Court explained neither *what* the "as a citizen" inquiry should account for (i.e., the factors to be considered) nor *how* it should be resolved (i.e., by either a court or a jury).

In light of this uncertainly, the Court notes that most courts have treated the question of whether a public employee's speech is made in a public employee's capacity as a citizen, or whether it is made pursuant to his or her official duties, as a question of law rather than as a question of fact. Indeed, courts have generally treated this question in the same manner as the broader legal inquiry (i.e., constitutional protection from employer discipline) of which it is a part. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202-1203 (10th Cir. 2007); *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C.Cir. 2007); *Williams v. Johnson*, 537 F.Supp.2d 141, 150 (D.D.C. 2008); *Hoffman v. Dougher*, 2008 U.S. Dist. LEXIS 2610, at *22

(M.D.Pa. January 14, 2008); *Ober v. Miller*, 2007 U.S. Dist. LEXIS 93236, at *30 (M.D.Pa. December 18, 2007); *Burns v. Borough of Glassboro*, 2007 U.S. Dist. LEXIS 42068, at *17-18 (D.N.J. June 11, 2007); *Shingara v. Miller*, 2007 U.S. Dist. LEXIS 10477, at *9-10 (M.D.Pa. February 15, 2007). This line of reasoning, which treats the overall question of constitutional protection as a single question of law (with three separate components), appears to be the majority approach. The strongest indication that the "as a citizen" inquiry should be decided by a court, rather than by a jury, comes from a decision of the United States Court of Appeals for the Fifth Circuit that was issued just eight days after this Court's prior memorandum opinion in the instant case. In *Charles v. Grief*, 522 F.3d 508 (5th Cir. 2008), the Fifth Circuit made the following observations in the form of a footnote:

> The magistrate judge commented in his report and recommendation that the question whether Charles's statements were made in his capacity as a concerned citizen or as a Commission employee is "a material fact properly resolved at trial." On further reflection, we acknowledge that, even though analyzing whether *Garcetti* applies involves the consideration of factual circumstances surrounding the speech at issue, the question whether Charles's speech is entitled to protection is a legal conclusion properly decided at summary judgment.

*Charles*, 522 F.3d at 513, n. 17. *Charles* stands for the proposition that while it is the function of the jury to determine the presence or absence of *factual circumstances* surrounding the speech at issue, it is the role of the Court to determine whether, given the presence or absence of such factual circumstances, the speech enjoys constitutional protection from employer discipline. The Defendants advanced this position at the oral argument. Doc. No. 70-2, p. 63. The Court finds this argument to be persuasive. Thus, the Court construes the language in *Foraker* describing the *Garcetti* inquiry as a "mixed question of fact and law" to mean that the ultimate question of

36

whether speech is made pursuant to a public employee's official duties is a question for the Court

to decide, whereas the question of whether certain factual circumstances exist is a question

amenable to resolution by a jury.

It remains to be determined whether the Court's prior determination should be sustained.

In support of his Motion for Reconsideration, Baranowski has presented testimonial evidence

from the *Hickenbottom* trial. At the trial, Lieutenant Clifford Jobe ("Jobe") testified as follows:

> Q. Okay. Mr. Baranowski testified that he was the incident commander. Can you explain the difference between an incident commander at a crime scene and the criminal investigation team, please?
>
> A. Yes, sir. Under the circumstances, the incident commander in this case is the first responding supervisor who has the authority and the obligation to pretty much get everything into a contained and isolated situation, set up a perimeter, establish what he's going to need in order for any emergency services, obviously an obligation to take control of the persons involved, be it by ambulance or by having them removed from the scene, and then make the appropriate contacts, including to command personnel to determine further who is going to conduct the investigation.
>
> Q. And what does the criminal investigation team do?
>
> A. The criminal investigation team actually comes on-site, takes over the investigation.

Doc. No. 63-4, pp. 48-49. Relying on Jobe's testimony, Baranowski asserts that his comments to

Waters and Depp were not made pursuant to his duties as the incident commander because such

duties ended when he prepared his written report of December 27, 2002. Nevertheless, as the

Court observed in the prior memorandum opinion, "a public employee can sometimes speak

pursuant to his or her official duties by volunteering unsolicited comments or criticisms."

*Baranowski*, 2008 WL 728366, at *21, citing *Mills v. City of Evansville*, 452 F.3d 646, 647-648

(7th Cir. 2006).  Moreover, it is significant that Baranowski testified that he would not have

discussed his reservations about the Ellerbe investigation with officers of lesser rank.  Doc. No.

26-9, p. 35; *Baranowski*, 2008 WL 728366, at *24 ("Though the 'practical' inquiry established

by *Garcetti* eschews reliance upon any particular factor, the capacity in which a public employee

speaks can sometimes be illustrated by reference to *whom* the relevant expression is

directed.")(emphasis in original); *Charles*, 522 F.3d at 514 (finding it significant that a public

employee addressed his comments to elected representatives rather than to his superiors);

*Meenan v. Harrison*, 2008 U.S. App. LEXIS 3025, at *9 (3d Cir. February 12, 2008)(statements

to the media deemed to be beyond a police officer's official duties).  Where a police officer

privately relays his misgivings about an investigation to his superiors based on his own

observations of a tragic scene, "there is no relevant analogue to speech by citizens who are not

government employees." *Garcetti*, 126 S.Ct. at 1961.

Speech by a public employee that is analogous to that uttered by a private citizen, of

course, is more likely to constitute speech "as a citizen" than is speech that is unique to the

public sector.  Indeed, the *circumstances* of speech can sometimes be more indicative of its

official or nonofficial nature than the *content* of such speech.  In *Reilly v. City of Atlantic City*,

532 F.3d 216 (3d Cir. 2008), the Third Circuit held that testimony constitutes speech "as a

citizen" even where the same "speech" would otherwise constitute speech pursuant to one's

official duties.  The primary basis for this decision was the obligation that each *citizen* has to

testify truthfully in a court of law, regardless of *why* he or she must testify.  *Reilly*, 532 F.3d at

231 ("Thus, the act of offering truthful testimony is the responsibility of every citizen, and the

First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by

one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully."). Baranowski's unwillingness to relay his reservations about the Ellerbe investigation to people other than his superiors only serves to illustrate that he was speaking as a police officer to other police officers rather than as a private citizen to members of the general public.[14]

Baranowski attacks the Court's reliance on his pleadings as a basis for concluding that his "speech" to Waters and Depp had been made pursuant to his official duties. Doc. No. 63, pp. 9-11, ¶¶ 26-28. In his complaint, Baranowski made the following allegations:

6. On the 24th day of December, 2002, two state police officers assigned to the Uniontown Barracks, shot and killed Michael Ellerbe, a 12 year old minor. Plaintiff Baranowski was the "incident commander" on the scene after the shooting occurred.

7. Subsequent to the shooting of the minor, Michael Ellerbe, plaintiff Baranowski, in his capacity as the "incident commander,["] and also as a use of force expert, complained to supervisors concerning the handling of the investigation into the shooting.

8. Shortly after making that complaint, defendant Depp warned Baranowski that adverse consequences would befall him if he was assisting the Ellerbe family in any claim against the State Police.

9. In February 2003, Baranowski informed supervisors of his belief that the Ellerbe shooting had not occurred as reported by the defendant officers involved in the shooting and that the Pennsylvania State police were covering up the truth.

10. Following plaintiff's complaints in February 2003, the defendants retaliated against the plaintiff subjecting him to repeated instances of unwarranted discipline

---

[14]The Court notes that Baranowski does not base his First Amendment claims on what he said to the FBI agent before speaking with Depp. Doc. No. 1, ¶¶ 1-14. Indeed, his interactions with the FBI agent are not even mentioned in his complaint. *Id.* Baranowski contends that Waters and Depp retaliated against him for what he said to *them*. This would be a different case if the particular statements at issue had been made to the FBI agent rather than only to Baranowski's superiors.

and the removal of his duties as a sergeant, this retaliatory conduct culminating in plaintiff's constructive discharge in July, 2003 when plaintiff's badge and assigned weapon were confiscated.

Doc. No. 1, ¶¶ 6-10.  In the prior opinion, the Court relied on paragraph 7 for the proposition that Baranowski had averred that his speech had been made pursuant to his official duties as the "incident commander." *Baranowski*, 2008 WL 728366, at *22-23.  Baranowski now claims that paragraph 7 refers not to his comments to Waters and Depp in February 2003, but rather to his comments to other supervisors immediately after the shooting.  He apparently spoke with other superiors about the manner in which the investigation was conducted as early as December 27, 2002.  Doc. No. 63, pp. 9-11, ¶¶ 26-28.  He contends that *those* statements, rather than his later statements to Waters and Depp, were made in his capacity as the incident commander.  The Court, however, finds this argument to be unconvincing.  The "practical" inquiry required under *Garcetti* eschews reliance on formal distinctions.  *Garcetti*, 126 S.Ct. at 1961-1962.  As the United States Court of Appeals for the Tenth Circuit observed in *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1203 (10th Cir. 2007), "if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."  Although Baranowski's speech may have postdated his duties as the incident commander, it certainly contributed to, or facilitated, his performance of such duties.  It was not beyond his duties to provide accurate information about the scene of the Ellerbe shooting.  Indeed, he does not deny that his preparation of the report of December 27, 2002, constituted an official report.  The Court does not believe that his later comments to Waters and

Depp somehow lacked the fundamental character of official business simply because others were officially conducting the PSP's investigation into the matter. *Vose v. Kliment*, 506 F.3d 565, 572 (7th Cir. 2007)("While Vose may have gone beyond his ordinary *daily* job duties in reporting the suspected misconduct outside his unit, it was not beyond his official duty as a sergeant of the narcotics unit to ensure the security and propriety of the narcotics unit's operations.")(emphasis in original).

The Court acknowledges that Depp allegedly told Baranowski that he was not a part of the investigation into the Ellerbe shooting. Doc. No. 26-9, p. 18. What matters, however, is whether Baranowski's *speech* was made pursuant to his official duties. The Court's inquiry is very "practical." *Garcetti*, 126 S.Ct. at 1961. Baranowski went to the scene of the Ellerbe shooting pursuant to his official duties. Shortly thereafter, he completed a report in accordance with his official duties. A few months later, he was interviewed about the matter by an FBI agent. He subsequently spoke privately with two of his superiors about his misgivings concerning the Ellerbe investigation. These communications bore the imprimatur of official business, even if they made clear only what such business did not encompass. Therefore, the Court remains convinced that the Defendants are entitled to summary judgment.

## IV.    CONCLUSION

When the Court issued its decision of March 18, 2008, it was unaware of the extent of the understanding between the parties concerning the issue of tolling. Given the representations made by the parties and the uncontradicted evidence of record, it is clear to the Court that the Defendants waived their statute of limitations defense with respect to the issue of tolling. For this reason, Baranowski's Motion for Reconsideration must be granted with respect to the statute

of limitations, and the Court's memorandum opinion of March 18, 2008, must be vacated insofar as it held that the Defendants had not waived their statute of limitations defense. The Court has determined that the remaining arguments raised by the Defendants concerning the statute of limitations defense are without merit. Thus, this action is not barred by the statute of limitations. Nevertheless, the Defendants are entitled to summary judgment on the ground that Baranowski's speech was not constitutionally protected from employer discipline because of the official nature of such speech. The Court adheres to its analysis in the prior opinion, as well as the additional observations made in this opinion. Baranowski's Motion for Reconsideration must be denied with respect to the First and Fourteenth Amendment issues. *Sigsworth v. City of Aurora*, 487 F.3d 506, 507-511 (7th Cir. 2007)(concluding that a police detective's speech had been made pursuant to his official duties under analogous circumstances).

As the Supreme Court noted in *McCulloch v. Maryland*, 17 U.S. 316 (1819), "it is a *constitution* we are expounding." *McCulloch*, 17 U.S. at 407 (emphasis added). The First Amendment was designed to ensure that "We the People" would remain the sovereigns in this land by prohibiting the Government from silencing the masses. It was not designed to "constitutionalize the employee grievance." *Connick v. Myers*, 461 U.S. 138, 154 (1983). The statements allegedly made by Baranowski enjoy constitutional protection from the sovereign powers of Pennsylvania. In holding that Baranowski's speech does not enjoy constitutional protection from employer discipline, the Court does not trivialize the courage of those who seek to expose governmental misconduct. Instead, it merely clarifies that the Constitution was never meant to provide a remedy for every inappropriate action taken by a governmental official. The people of Pennsylvania, of course, remain free to address the concerns of people in Baranowski's

position by invoking the legislative process. *Garcetti*, 126 S.Ct. at 1962 ("The dictates of sound judgment are reinforced by the powerful network of legislative enactments–such as whistle-blower protection laws and labor codes–available to those who seek to expose wrongdoing."). The Court can only apply the law as it currently exists.

Accordingly, IT IS HEREBY ORDERED that the Plaintiff's Motion for Reconsideration (*Document No. 63*) is **GRANTED IN PART** and **DENIED IN PART**. The Court's memorandum opinion of March 18, 2008, is hereby **VACATED** insofar as it held that the Defendants had not waived their statute of limitations defense with respect to the issue of tolling. The opinion remains in force in all other respects.

BY THE COURT:

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc:    All counsel of record